## LENDLE v. ROBINSON et al.

(Supreme Court, Appellate Division, First Department. July 17, 1900.)

1. LANDLORD AND TENANT—TENEMENT HALLWAYS—DEFECTIVE CARPETING—IN-SUFFICIENT LIGHT—INJURY TO TENANT—EVIDENCE.

Laws 1895, c. 567, § 9, requires a light in the hallway of each floor of a tenement house from sunset until 10 p. m., and, when no window opens from the hallway outside, from 8 a. m. to 10 p. m., unless otherwise sufficiently lighted. Light from a skylight in a tenement house roof was admitted to the third floor hallway through an opening 11 feet long and 5 inches wide. Plaintiff's fall down the hall stairway from the third floor was alleged to have resulted from failure to provide proper carpeting and sufficient light. No gas was lit. Plaintiff testified that the accident occurred October 20th, a little before 6 o'clock p. m.; that she could not see the steps, and her foot caught in the carpet. Witnesses testified that the hall was too dark to recognize any one, and identified a piece of worn carpet exhibited as that which was on the stairs. Defendant's witnesses, who were his tenants, relatives, and employés, testified that the accident occurred from 4 to 4:30 p. m., that it was light enough to read, that the carpeting was as good as new, and that plaintiff stated she made a misstep, though they stated that, to read, they stood in the path of the light. *Held*, that defendant's negligence was a question for the jury, and the evidence was sufficient to sustain a verdict for the plaintiff.

2. SAME—CONTRIBUTORY NEGLIGENCE.

That a tenant claiming for injuries occasioned by a fall down a hall stairway, due to a worn carpet and insufficient light, knew of the condition of the carpet and darkness of the hall, and did not provide herself with a light, did not constitute contributory negligence as matter of law, but presented a question for the jury.

3. SAME—STATUTORY REQUIREMENTS—SKYLIGHTS—INSTRUCTION.

Laws 1895, c. 567, § 9, requires a light in the hallway on each floor of a tenement house from sunset till 10 o'clock, and, in each hallway from which no window opens outside, from 8 a. m. till 10 p. m., unless otherwise sufficiently lighted. Evidence conflicted as to whether a tenant's fall down a hall stairway from the third floor of a five-story tenement house, alleged to have been caused by insufficient light, occurred before or after sunset, and as to the sufficiency of the light. Light was admitted from a skylight in the roof through an opening into the hall 11 feet long and 5 inches wide. *Held*, that there was no error in instructing the jury to determine. whether the accident occurred before or after sunset; if before, whether there was a window from the hallway to the outside; if there was no such window, whether the skylight furnished sufficient light, and, if not, whether the accident was caused thereby; and if the accident occurred after sunset, in absence of a light and because thereof, without contributory negligence, to find for such tenant,—since such skylight was not an opening to the outside from the hallway, within such statute, and the sufficiency of the light furnished was properly left to the jury.

4. JUDICIAL NOTICE—TIME OF SUNSET—EVIDENCE—ALMANAC.

Since a court may take judicial notice of the time of sunset on a particular day, it was not error to admit an almanac in evidence to refresh the minds of the court and jury as to such time.

Appeal from trial term, New York county.

Action for injuries by Charlotte Lendle against Francis H. Robinson and others. From a judgment in favor of the plaintiff, and an order denying a new trial, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

William Blaikie, for appellants.
Clarence Lexow, for respondent.

O'BRIEN, J. As the principal question presented on this appeal is whether the verdict of $2,750 in plaintiff's favor, rendered after trial of the issues, is sustained by the evidence, it is necessary to refer in brief to the testimony. The action was brought to recover damages for injuries which the plaintiff sustained by a fall down the stairway of defendants' tenement house, 521 West Forty-Eighth street, in the latter part of the afternoon of October 20, 1897, occasioned, as alleged, by their negligence in failing to keep the stair carpeting in proper repair and the hallway sufficiently lighted. The stairs were covered with oilcloth, and on each stair was a rubber pad, both of which, it is said, contributed to the accident by their worn condition. Gas jets were provided on each landing, but were not lit at the time of the accident, and it was expected that sufficient light would enter the hallway during the day from a skylight above the stairway in the roof, and through opaque glass doors and windows entering into the apartments. The skylight was built so that, besides two end vertical windows, each measuring about 2 by 3 feet, there was an inclined overlapping glass measuring about 6 feet by $3\frac{1}{2}$ feet. The total width of the hallway was 5 feet $8\frac{1}{2}$ inches; the stairway measuring 2 feet 8 inches, and the opening through the floors being 5 inches wide and 11 feet 10 inches long. The tenement house was five stories high, with four families on each floor, and the plaintiff, at the time of the accident, lived in one of the front apartments on the third floor, and it was down the stairs leading from the third to the second floor or story that she fell. Her testimony is that she left her apartment at a little before 6 in the afternoon, and went to see Mrs. Whalen, who lived on the same floor in the rear, and, a few minutes later, left there, and started to go downstairs to mail a letter, and walked slowly to the stairway; that it was absolutely dark there all day long, and she could not see the steps, and tried to get hold of the banister, reaching out with her hand; that she caught her left foot in a worn and torn place in the carpet when her right foot was down on the step below, and she fell; that before the accident she had spoken both to Mrs. Daley, the janitress, and also to Mr. Elmer, the rent collector, about the worn carpet and the darkness in the hall, and had been promised that these would be remedied, and Mrs. Daley had herself admitted that the hall was in a bad way; that before the accident she was in excellent health and did all the housework, but can do little now; that she was ill in bed four or five months after the fall, and as the result of this accident has lost over 30 pounds in weight. Dr. Byrne testified that he was called to see the plaintiff at the time of the accident, reaching there about 6 o'clock, and there was then no gas lit in the hall, and it was so dark there he could not recognize any one; that Mrs. Lendle was severely injured by the fall, having suffered a scalp wound, two fractured ribs, one of which penetrated the chest wall, and other contusions; was under his treatment till February, 1898, and some of the effects of her injuries will be permanent. The doctor identified a piece of oilcloth shown in court by the plaintiff as that which he had seen on the top step of the third floor the day of the accident, as he remembered the torn and worn places. Other evidence was given as to the precise time the accident occurred, whether or not it was dark

in the daytime in the hallway, and whether the oilcloth and rubber pad were worn, and upon each of these points the testimony was conflicting. In corroboration of the testimony given by the plaintiff and Dr. Byrne, there is that of the plaintiff's husband, her son, her daughter, and her son-in-law, who say the accident occurred near 6 o'clock, and that it was so dark in the hall in the daytime that persons could not be recognized, and assert that the worn carpeting shown in court by plaintiff was taken from the top step soon after the accident, and carefully preserved for the trial. On the other hand, the defendants' witnesses, who were tenants in the building or related to or employed by defendants, state as positively an opposite version. They invariably say that the accident occurred at "from four to half past four o'clock"; agree that it was light enough in the hall in the daytime to read ordinary type; deny that the carpeting produced by the plaintiff was formerly on the step; and almost without exception testify that the plaintiff, soon after the accident, said she had made a "misstep." No one was with the plaintiff when she fell, yet most of the defendants' witnesses say that, even after they were informed that she fell because of a misstep, they immediately examined the carpeting, which they had known was not worn, and found it as good as new. Although the defendants' witnesses, some of whom were in the building at all times of day, claim that one could read in the hallway, they admit that to do this they stood very near the banister, or in the path of the light from above, which is not inconsistent with the statements of plaintiff's witnesses that in other portions of the hallway it was dark most of the day. Nor are defendants' witnesses consistent as to time. Mrs. Whalen places the accident between 4 and half past, and says she was in Mrs. Lendle's apartment a few minutes thereafter. It appears, however, that her supper, which she had generally at 6 o'clock, was delayed that night. Mrs. Whalen says that the gas was lit that evening in the hall at 5 o'clock, therein contradicting the doctor and also the defendants' witness Mr. Daley, who says he lit the gas at 4 o'clock, as his wife had told him to do. Mrs. Daley, however, states that it was after the accident that she told her husband to light the gas, and that the accident occurred between 4 and half past, and she then went upstairs to see Mrs. Lendle, and afterwards came down, and said to her husband, "Please light the gas, because Mrs. Lendle is after falling down." This latter portion of her testimony harmonizes in part with that of Mrs. Lendle's son-in-law, who says he asked Mrs. Daley what time the accident occurred, and she said at half past 5, because she looked at the clock, knowing there would be some trouble, and was glad there was half an hour yet before the gas needed to be lit. Thus we have sufficient conflicting evidence to render it necessary to submit the issues to the jury.

Nor can we find, as matter of law, taking the plaintiff's statement as true, that she was guilty of contributory negligence. She says she walked slowly along the dark hallway to go downstairs to mail a letter, and reached out for the banisters, but caught her foot in the torn carpeting, and fell. It is urged by the appellants that, knowing the place was dark and dangerous, she should have taken a light. Whether or not a person is guilty of negligence in not carrying a light under

such circumstances was raised, considered, and passed upon in the case of Kenney v. Rhinelander, 28 App. Div. 246, 50 N. Y. Supp. 1088, recently affirmed in the court of appeals on the prevailing opinion of the appellate division. There suit had been brought to recover for injuries sustained by a fall in a hallway after 10 o'clock at night, when there was no light, caused, as alleged, by a torn carpet on the stairs. As therein said:

"We cannot adopt as a fixed rule that it is, in and of itself, contributory negligence for a person to use a stairway under such circumstances without providing himself with a light. Whether or not it was his own negligence in doing so is a question that must be left to the jury."

The question of defendants' negligence was also one for the jury, and upon the evidence they might justly have found either that the carpeting was worn, or that the hall was not safe because there were no adequate windows or artificial means of lighting provided. It is admitted that the gas was not lit at the time of the accident, and there was evidence that not much light could pass down to the third floor through the five-inch space from the skylight on the roof above the fifth floor, which was the only exterior opening. The construction given the statute of 1895 (chapter 567, § 9) introduced in evidence, which relates to the lighting of hallways in tenement houses, was, we think, as fair and liberal to defendants as they were entitled to receive, although on this appeal much fault is found with it. The law provides that:

"The owner or lessee of every tenement or lodging house in the city of New York shall keep a light burning in the hallway upon each floor of said house from sunset until ten p. m. throughout the year. In every tenement house in the said city in which there is a hallway or hallways with no window opening from such hallway outside of said house, a light shall be maintained by said owner or lessee in each such hallway between the hours of eight a. m. and ten p. m. of each day unless such hallway shall be otherwise sufficiently lighted."

The purpose of the act of 1895 was to secure sufficient lighting in each hallway of a tenement house both by day and by night; and it will be noticed that the statute provides that from sunset till 10 p. m., throughout the year, a light shall be kept burning "in the hallway upon each floor." The learned trial judge called the attention of the jury to the fact that they were first to determine whether the accident occurred before or after sunset, and, if before, whether there was "a window from the hallway to the outside. If there was no window from the hallway to the outside, was the hallway sufficiently lighted by the skylight? If it was not sufficiently lighted, then was the accident due to want of sufficient light? * * * Then, if it occurred after sunset, and the jury should find that it was after sunset, and that there was no light there, and that the accident was caused by the want of a light, and without negligence on the part of the plaintiff, of course then they must find a verdict for the plaintiff." The trial justice therefore did not determine, as matter of law, that there were no openings in the hallway to the outside, or that the skylight was insufficient, but, assuming that the accident occurred before sunset, he left it as a question of fact for the jury to determine whether there was any light received from windows in the hallway opening on the

65 N.Y.S.—57

outside, or sufficient light from the skylight. He refused, it is true, to hold that the skylight was an opening from the hallway to the outside, and most of the fault which the appellant finds is with this ruling, which it is insisted is incorrect. What, in effect, the learned trial judge held, was that, although a skylight might be an opening on the roof to the outside, in its general acceptation it was not an opening to the outside from the hallway on the third floor. It may be that in the construction of certain houses, and even tenements, all the space in the center of the building used for passageways from the front door to the roof could be correctly described as a hallway, and a skylight or dome on the top might be said to be an opening to the outside from such hallway. It will be noticed, however, as already pointed out, that the act of 1895 itself says that, after sunset, light shall be provided "in the hallway upon each floor" of the house; and a fair construction, therefore, of the provisions relating to the daytime wherein mention is made of openings in the hallway to the outside would be that the statute refers to that part of the hallway which is on each floor; and the words "unless otherwise sufficiently lighted" admit of the consideration whether the skylight in the roof, in the absence of such openings on each floor, gave sufficient light.

Another exception was taken to the introduction of an almanac for the purpose of showing the time of sunset on the day of the accident. An almanac from an unofficial source, and not properly verified, is not, strictly speaking, competent evidence; but receiving it as an aid to the memory of the court and jury is not reversible error. It was entirely proper for the court, without evidence, to take judicial notice of the time of sunset on the day of the accident, and, for the purpose of refreshing the mind of the court, there was no legal objection to consulting an almanac. In Hunter v. Railway Co., 116 N. Y. 615, 23 N. E. 9, 6 L. R. A. 246, it is said:

"Thus, it has been held that courts will take judicial notice  *  *  *  of the time of the rising and the setting of the sun and moon, and generally of those things which happen according to the ordinary course of nature; the course of time and the movements of the heavenly bodies; the coincidence of the days of the week with the days of the month."

And in a preceding case (Case v. Perew, 46 Hun, 57) it was said:

"The almanac was not competent evidence, as such, to prove when the moon rose on that day; but, if the statement on the subject in it was correct, the defendant could not have been prejudiced by it. Judicial notice will be taken of the time the moon rises and sets on the several days of the year, as well as the succession of the seasons, the difference of time in different longitudes, and the constant and invariable course of nature. It may be assumed that the court, treating the almanac as correctly stating the time when the moon rose on the day in question, received it in evidence to refresh the memory of the jury on the subject; and in that view we think it was competent."

In the present case the almanac was expressly offered and received "for the purpose of refreshing the mind of the court and the jury," and we think, therefore, there was no error committed.

We have thus, with some detail, referred to the evidence relating to the two theories upon which it was sought to establish the defendants' negligence (namely, in maintaining for an unreasonable time a defective pad on the top step or landing, and in failing to properly

light the hallway, as required by statute), for the purpose of determining whether the main contention of the appellants was sound,—that the preponderance upon either theory was so greatly in defendants' favor that a verdict should have been entered for them, or else that the one entered in plaintiff's favor should be set aside. Our conclusion upon a reading of the record is, as already stated, that these were questions which the trial judge was bound to submit to the jury; and, he having done so in a charge which was clear and impartial, we can find no valid ground, either in the procedure upon the trial or in the exceptions taken, which would justify our disturbing the verdict rendered.

The judgment appealed from should therefore be affirmed, with costs. All concur.